[No. 12318.   Department Two. — March 25, 1890.]

## STEPHEN H. CHASE ET AL., RESPONDENTS, v. THE SOUTH PACIFIC COAST RAILROAD COMPANY, APPELLANT.

VENUE — RAILROAD CORPORATION — BREACH OF OBLIGATION — REFUSAL TO CARRY LUMBER — SHOWING REQUISITE FOR CHANGE OF VENUE — PRESUMPTION. — A corporation may be sued in the county where its breach of obligation occurred, as well as in the county where it has its principal place of business; and where a railroad company is sued for damages resulting from its wrongful refusal to carry the plaintiff's lumber to market, and there is nothing in the body of the complaint to show where the breach of the obligation occurred, the action is presumptively brought

in the proper county, and it devolves upon the railroad company to show that the breach did not occur in that county, to entitle it to a change of venue to the county where it has its principal place of business.

APPEAL from an order of the Superior Court of Santa Cruz County refusing a change of venue.

The facts are stated in the opinion.

*Pillsbury & Blanding,* for Appellant.

*D. M. Delmas,* for Respondents.

GIBSON, C.— This is an appeal from an order of the superior court of the county of Santa Cruz denying the defendant corporation's motion for a change of venue to the city and county of San Francisco.

The grounds of the defendant's motion are, that the obligation or liability sued upon did not arise in the county of Santa Cruz; and that the defendant's principal place of business is in the city and county of San Francisco.

Article 12, section 16, of the constitution of this state, declares: —

"A corporation or association may be sued in the county where the contract is made or is to be performed, or where the obligation or liability arises or the breach occurs; or in the county where the principal place of business of such corporation is situated, subject to the power of the court to change the place of trial as in other cases."

The appellant contends that the action is upon a tort arising from a conspiracy between it and certain lumber dealers, which prevented plaintiffs from carrying on their business, and could only be properly brought in the county where the liability arose, or where the defendant's principal place of business is situated. And as the complaint does not show where the conspiracy was formed, and the defendant, by the affidavit of its president, having shown

that none of the defendant's alleged co-conspirators reside, or ever have resided, in the county of Santa Cruz, and that defendant's principal place of business is at the city and county of San Francisco, the court erred in denying its motion for a change of venue to the city and county where it has its principal place of business. Counsel for respondent concedes that the principal place of business of the defendant is correctly set forth in the affidavit, but argues that the cause of action is misconstrued by counsel for appellant; that it is for damages resulting from defendant's wrongful refusal to receive and transport plaintiffs' lumber upon and over its railroad, and that as defendant's affidavit does not show that such refusal was not made in the county where the action was brought, the motion was properly denied.

The question arising on this contention is, What is the cause of action?

The allegations of the complaint are in substance as follows: That plaintiffs, who were and are partners under the firm name of S. H. Chase & Co., on July 7, 1886, and for more than a year prior thereto, have since been and still are the lessees of certain timber lands and the owners of certain saw-mills, known as the Day mill, located in the Santa Cruz Mountains, and were engaged in the business of manufacturing sawed lumber at said mills, and selling the same along the line of the defendant's railroad; that the said railroad, at all times mentioned and referred to, extended from the Santa Cruz Mountains to San José, and was owned and operated by the defendant, which was during all said times a railroad corporation, organized and existing under the laws of this state, and was a common carrier of goods for hire to and from any point on its railroad; that in order for plaintiffs to carry on their business profitably, it was indispensable for them to transport their manufactured lumber to market upon defendant's railroad; and from the beginning of the lumber season of the year 1886, to wit, May 1st, until

the 7th of July of the same year, they shipped their manufactured lumber upon the said railroad, and defendant had carried the same for them to all points along the line designated by them; that on or about July 1, 1886, defendant entered into an illegal combination and conspiracy with certain manufacturers and venders of lumber for the purpose of inflating the prices of lumber upon the market, and to give the parties to the conspiracy a monopoly of the lumber trade; and it was agreed by and between the conspirators, including the defendant, that unless the plaintiffs should enter into the conspiracy the defendant should refuse to carry any of their lumber; that on the seventh day of July, 1886, after the formation of the conspiracy against plaintiffs, they brought a load of lumber containing two thousand feet to the station on the line of said railroad, known as Boulder Creek station, and which is the nearest station to their saw-mills; and during the day-time of said day, while the office of the defendant at the station was open for the transaction of business, the plaintiffs offered the lumber to defendant for the purpose of having the same carried thence to San José upon the line of the said railroad, and made a demand of defendant that it should so carry the same; and the plaintiffs at the same time offered to pay, and were ready and able to pay, to the defendant the customary and reasonable charges for such transportation; although the defendant was then able to carry the lumber, and then and there had the necessary engines, cars, and other appliances for such purpose, it refused to carry the lumber on account of the conspiracy aforesaid, and then and there declared to plaintiffs that it would not carry the lumber unless the plaintiffs joined and became members of the conspiracy aforesaid, which they then and ever since have refused to do, and the defendant has ever since refused to carry any lumber for plaintiffs; that by reason of the aforesaid refusal of said defendant to carry said lumber, and its express determi-

nation not to carry any for the plaintiffs, it became and was, and has continued to be, impossible for them to profitably carry on their business of manufacturing lumber at their mills; and as a result of their business being thus rendered unprofitable, and of their inability to ship lumber on defendant's railroad, they have been compelled to shut down their mills, discharge the men whom they had employed in connection therewith, and to forfeit contracts which they had entered into for the sale of lumber, and also the good-will of their business, whereby they suffered general and special damages.

These allegations, we think, clearly show that the gist of the action is the injury resulting from the defendant's wrongful refusal to carry plaintiff's lumber to market, because by such refusal plaintiffs were unable to sell their lumber, and consequently could not profitably operate their mills.

It is to be observed, also, that the action is not prosecuted against any of the alleged conspirators except the defendant, who committed the wrong by which plaintiffs claim to have been injured. The conspiracy, it is true, led up to the refusal which caused the injury, but it is merely stated as introductory matter to show how the refusal originated, and therefore consists of mere matter of inducement. (Gould's Pleading, sec. 9, c. 3; 1 Chitty on Pleading, 296.) And the employment of it in this case seems to be peculiarly appropriate, as showing that the refusal of defendant to carry plaintiff's lumber to market was not an unexplained act, but one performed in the furtherance of an illegal combination, of which the plaintiffs became the victims because they refused to join it.

The only venue laid in the complaint is in the title thereof; there is nothing in the body of it to show within what county the defendant refused to perform its duty as a common carrier toward plaintiffs; but as the court has jurisdiction of the subject-matter of this action

(Cal. Const., art. 6, sec. 5; Code Civ. Proc., sec. 76), and as an action upon the breach of such an obligation may be brought in the county where the breach occurred, as well as in the county where the defendant has its principal place of business (Cal. Const., art. 12, sec. 16), the action was presumptively brought in the proper county, and it devolved upon the defendant to show, upon its motion, that the breach of its obligation as a common carrier, declared upon by plaintiffs, did not occur in Santa Cruz County. Having failed to do this, the motion was properly denied; and we therefore advise that the order be affirmed.

VANCLIEF, C., and FOOTE, C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the order is affirmed.